IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Curtis J. Duheme, | ) | C/A No. 3:11-2902-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Columbia CSA-HS Greater Columbia Healthcare System LP, *d/b/a Providence Hospital*, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

The plaintiff, Curtis J. Duheme ("Duheme"), filed this action against his former employer, Columbia CSA-HS Greater Columbia Healthcare System LP, d/b/a/ Providence Hospital ("Providence"). Duheme alleges violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., as well as state law claims for breach of contract. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Providence's Motion for Summary Judgment. (ECF No. 29.) Duheme filed a response in opposition (ECF No. 35), and Providence replied (ECF No. 36). Having reviewed the parties' submissions and the applicable law, the court finds that Providence's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Duheme, to the extent they find support in the record. Duheme, a male in his late forties, worked

for Providence as a Registered Nurse from 1999 until his termination in 2010. He earned good performance evaluations and was promoted to work the desirable, lucrative "Baylor" shift, where nurses worked two, twelve-hour shifts on Saturday and Sunday but were paid as if they had worked thirty-six hours.

A few months prior to Duheme's termination, Jennie Thomas became his immediate supervisor. On September 9, 2010, an incident occurred when Thomas approached Duheme at a nurse's station during the busiest part of his shift to inform him that his request for time off to attend a function at which his wife was being honored was denied because Duheme had no remaining vacation leave. Duheme responded "[t]hat's bullshit" and argued that he did have available leave. Duheme admits that he raised his voice "a little" and that he stated that he was "tired of this" and was going to quit. When Thomas requested that Duheme come to her office to discuss the issue, he told her that he was too busy.

Thomas recommended that Duheme's employment be terminated for violation of hospital policies prohibiting "use of vulgar, profane or obscene language directed to a supervisor, co-worker, physician, patient or visitor" and "behavior inconsistent with the mission, values, and philosophy statement of Sisters of Charity Providence Hospitals." (See Policy No. 206, ECF No. 29-3 at 41-43; Notice of Disciplinary Action, ECF No. 29-3 at 34.) Upon review, Vice President Ryan Hall, a male who is approximately one year younger than Duheme, and Vice President for Human Resources Richard Grooms, a male in his late thirties, authorized Duheme's termination. Duheme appealed the decision through Providence's Problem Resolution Process. A Problem Resolution Panel consisting of three females and two males unanimously upheld Duheme's separation from employment. Duheme then appealed the Panel's decision to Providence's Chief Executive Officer,

George Zara, a male in his sixties, who upheld the decision of the Panel. After exhausting his administrative remedies with respect to his claims of disparate treatment based on sex and age,[1] Duheme commenced this action.

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639,

---

[1] Providence contends that Duheme did not administratively exhaust a disparate impact claim based on age, and Duheme appears to agree that this claim should be dismissed. (See Pl.'s Mem. Opp'n Mot. Summ. J., ECF No. 35 at 8 n.1.)

PJG

645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every

Page 5 of 11

PJG

Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.      Duheme's Claims of Disparate Treatment Based on Gender and Age**

To establish a *prima facie* case of Title VII discrimination based on disparate discipline, a plaintiff must show: (1) that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against him were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). Similarly, to establish a *prima facie* case of Title VII discrimination with regard to a disciplinary discharge, a plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for the job and that his job performance was satisfactory; (3) that he was discharged; and (4) that other employees outside the protected class were retained under similar circumstances. Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).[2] To prevail on either theory, Duheme must show that an employee outside the protected class who was similarly situated to him was treated more favorably. See Lightner, 545 F.3d at 264-65 (requiring a plaintiff to show that he engaged in prohibited conduct *similar* to that of a person of another race, color, sex, religion, or national origin); Bryant, 288 F.3d at 133 (requiring a plaintiff to demonstrate that other employees outside the protected class were retained under *similar* circumstances). Generally, to be similarly

---

[2] The *prima facie* case of ADEA discrimination based on disparate discipline or disciplinary discharge is essentially the same, except that instead of examining persons "outside the protected class" or "of another race, color, sex, religion, or national origin," the *prima facie* case examines persons "substantially younger" than the plaintiff. See, e.g., Tolley v. Health Care & Ret. Corp., Inc., 133 F.3d 917, 1998 WL 24972, at *2 (4th Cir. Jan. 21, 1998); see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996) (discussing the *prima facie* case under the ADEA).



situated and thus permit a valid comparison, the employees outside the protected class must have dealt with the same decision maker, been subject to the same standards, and engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated").[3]

To establish the required inference of discrimination, Duheme presents a putative comparator, Betsy Haugen, a female who is *older* than Duheme.[4] However, while the undisputed evidence shows that Haugen used profanity similar to that used by Duheme in a conversation with Thomas, it also indisputably shows at least two mitigating circumstances that prevent Haugen from being a valid comparator to Duheme. First, all of the evidence agrees that Haugen used the profanity in a casual conversation with Thomas, rather than directing the profanity at her supervisor in anger.[5] (See Thomas Aff. ¶ 5, ECF No. 29-9 at 2; Haugen Statement, ECF No. 29-5; Response to S.C. Human Affairs Commission, ECF No. 29-6.) Second, the evidence indisputably shows that Haugen used the objectionable word at a time and in a place where patients or their families could not have

---

[3] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Haywood v. Locke, No. 09-1604, 2010 WL 2711294 (4th Cir. July 6, 2010); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 Fed. Appx. 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).

[4] Haugen's age alone precludes her utility in establishing a *prima facie* case of age discrimination.

[5] Although Duheme attempts to avoid summary judgment by arguing that his and Thomas's version of the incident at issue conflict, these differences do not preclude summary judgment. First, even accepting Duheme's milder version of events as accurate, he does not dispute that he was upset, raised his voice "a little," and cursed at Thomas. (Duheme Dep. 27:22-28:3, 34:12-16, ECF No. 29-3 at 17-18, 23.) Thus, even according to him, his conduct is materially different than Haugen's.

overheard it. (Id.) These circumstances mitigating Haugen's conduct preclude her from being a valid comparator to Duheme.

Next Duheme attempts to compare his conduct to the general workforce at Providence, contending that "everyone" used profanity but no one else was disciplined for it. This argument is unavailing for at least two reasons. First, courts have required plaintiffs who are relying on comparator evidence to identify a specific comparator rather than making vague assertions that unspecified individuals were treated more favorably. See, e.g., Causey v. Balog, 162 F.3d 795, 801-02 (4th Cir. 1998) (holding that where race- and age-based animosity could be shown through differential treatment of similarly situated employees, plaintiff's conclusory statements that his employer "treated him less favorably than younger black and white employees of similar rank," "without specific evidentiary support, cannot support an actionable claim for harassment"); Barricks v. Eli Lilly and Co., 481 F.3d 556, 560 (7th Cir. 2007) (concluding that a plaintiff's age claim failed where she alleged that "everyone beside her got a raise" without attempting to point to a similarly situated younger employee who had received more favorable treatment); Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt., 816 F. Supp. 2d 297, 316 (M.D. La. 2011) ("In the context of a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated.") (citing Lee v. Kansas

City Southern Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009)).[6] Moreover, even if a comparison to "everyone else" were a valid one, it cannot show disparate treatment based on gender or age, since Duheme has not and cannot apparently show that these other, unidentified employees were either all female or all substantially younger than him. See Barricks, 481 F.3d at 560 (no valid comparator where the record failed to disclose the age of most of the other employees). Thus, Duheme cannot show that similarly situated female employees were treated more favorably than he, nor can he show that any similarly situated, substantially younger employees were treated more favorably than he. See Mitchell, 964 F.2d at 583. For the same reasons, Duheme cannot show that Providence's proffered reason for his termination—violation of the policies prohibiting "use of vulgar, profane or obscene language directed to a supervisor, co-worker, physician, patient or visitor" and "behavior inconsistent with the mission, values, and philosophy statement of Sisters of Charity Providence Hospitals"—were a pretext for unlawful gender or age discrimination. See Laing v. Federal Exp. Corp., 703 F.3d 713, 719 (4th Cir. 2013) (discussing the significance of comparator evidence at the pretext stage); see also Warch, 435 F.3d at 516 (noting the flexibility of the McDonnell Douglas framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's performance] at different stages of the McDonnell Douglas framework").

---

[6] In fact, this has court confronted a similar factual scenario to that presented here. In Duggan v. Sisters of Charity Providence Hospitals, 663 F. Supp. 2d 456 (D.S.C. 2009) (Perry, J.), the court rejected the attempt by the plaintiff, a male nurse at Providence, to establish that he was disciplined more harshly than females for cursing when he could not identify a specific similarly situated female comparator meeting the characteristics discussed in Mitchell; to the contrary, the evidence showed that Duggan's supervisor had also fired three female nurses for using profanity.

PJG

D. **Breach of Contract**

Any state law breach of contract claim also fails. Duheme has not identified any provision that would have altered his at-will employment status. See Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 22 (S.C. Ct. App. 2006) ("[B]ecause nothing in the employee handbook outlined progressive disciplinary procedures in mandatory terms, the presumption that the employment was at-will was not rebutted . . . ."). Moreover, at least one of the provisions upon which Duheme appears to rely was conspicuously disclaimed in accordance with South Carolina law. (Duheme Dep. Ex. 12, ECF No. 29-3 at 41-43); S.C. Code Ann. § 41-1-110.

## RECOMMENDATION

All of Duheme's claims fail as a matter of law. Accordingly, the court recommends that the defendant's motion for summary judgment (ECF No. 29) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 24, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).